```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
HAJI DUNCAN, pro se,                                         :
                                                             :         MEMORANDUM & ORDER
                                  Plaintiff,                 :         11-CV-5654 (DLI)(RLM)
                                                             :
                  -against-                                  :
                                                             :
UNIVERSAL MUSIC GROUP INC., and                              :
VIACOM, INC.,                                                :
                                                             :
                                  Defendants.                :
------------------------------------------------------------ x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Haji Duncan ("plaintiff") filed the instant action, *pro se*, against defendants UMG Recordings, Inc. ("UMG") and Viacom Inc. ("Viacom") in the Supreme Court of the State of New York, Kings County. UMG properly removed the action to this Court, to which Viacom consented. (*See generally* Notice of Removal, Doc. Entry No. 1; Consent to Removal, Doc. Entry No. 4.). Plaintiff alleges various claims under the First Amendment and New York statutory and common law arising out of the production and publication of two movies, *Get Rich or Die Tryin'*, and *13*. (*See generally*, Complaint ("Compl."), attached to UMG's Notice of Removal, Doc. Entry No. 1.) UMG and Viacom moved for dismissal with prejudice. (*See* UMG's Mot. to Dismiss, Doc. Entry No. 17; Viacom's Mot. to Dismiss, Doc. Entry No. 13.) Plaintiff filed a consolidated opposition to both motions. (*See* Plaintiff's Opposition ("Pl. Opp."), Doc. Entry No. 24). Additionally, plaintiff moved for leave to amend his complaint (*see* Pl. Mot. for Leave to Am., Doc. Entry No 27) and to join the New York City Department of Homeless Services ("DHS") as an additional defendant (*see* Pl. Mot. to Join DHS, Doc. Entry No. 28). For the reasons set forth below, the motions to dismiss with prejudice are granted. As

1

any amendment of the complaint would be futile, plaintiff's motion for leave to amend is denied, as is his motion to join DHS as an additional defendant.

## BACKGROUND

Plaintiff seeks $10 million for the alleged use of his identity in two movies, *Get Rich or Die Tryin'* and *13*. The first movie, *Get Rich or Die Tryin'*, is a fictionalized account of the life of rap artist Curtis Jackson who is professionally known as "50 Cent." (*See* Viacom's Memorandum of Law ("Viacom Mem."), Doc. Entry No. 14, at 4.) In that movie, the antagonist drug lord, "Majestic," is shot and killed by individuals associated with the protagonist, "Marcus," who is played by Jackson. (*Id*.) Plaintiff alleges that, while he was in prison from 1997-2006 for a bank robbery conviction, he was a member of a prison gang and his nickname was "Majestic." (Compl. ¶¶ 21-22, 27-28.) Plaintiff contends that UMG and Viacom named the antagonist "Majestic" to incite violence against him and that various lines such as "F---Majestic," "Diss Majestic," are direct, defamatory references to him. (*Id*. ¶¶ 13(e), 26, 32.)

The second movie, *13*, centers on a game of Russian Roulette, in which the film's protagonist Vince, is "Contestant 13." (Viacom Mem. at 5.) Vince wins the game but, nonetheless, is shot and killed at the end of the movie. (*Id*.) Plaintiff alleges that this movie, too, by way of numeric codes, sends signals to various individuals to harm him. For example, a train displaying the number 4207 is shown in the movie, and plaintiff's birthdate is April 2, 1975. (Compl. ¶ 35.) The letter "M" is the thirteenth letter of the alphabet, and, also, the first letter of "Majestic," plaintiff's nickname. (*Id*.) Vince, the main character is shot three times in his torso and plaintiff has three tattoos on his torso. (*Id*.) Additionally, plaintiff alleges that he and his mother have former addresses that consist of digits that, when added, equal the number 13: 292 Lexington Avenue, 436 W. 27th Drive. (Compl. ¶¶ 13(i)(1), 13(e)-(f).)

At the time the parties briefed the instant motions, plaintiff resided in a home operated by DHS. Plaintiff has since sought leave to amend the complaint and to join DHS as an additional defendant. Plaintiff alleges that DHS is involved in a conspiracy with Viacom and UMG to incite violence against him. (*See generally* Pl. Mot. to Join DHS.)

## DISCUSSION

### I. Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F. 3d 768, 776 (2d Cir. 2002). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F. 3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F. 3d 69, 72 (2d Cir. 1995).

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F. 3d 565, 569 (2d Cir. 2005) (citation and internal quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F. 3d 917, 922 (2d Cir. 1998) (citation omitted).

## II.     Application

### A.     Plaintiff's First Amendment Claims

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I. It is well settled that a party may not state a claim for a violation of the First Amendment without alleging wrongful conduct by a state actor. *See, e.g.*, *Loce v. Time Warner Entm't Advance/Newhouse P'ship*, 191 F. 3d 256, 266 (2d Cir. 1999) ("The First Amendment applies only to state actors."). In the instant action, plaintiff alleges three claims under the First Amendment against defendants UMG and Viacom, both of which are private entities. (Compl. ¶¶ 38-54; Viacom Mem. at 13-14; UMG's Memorandum of Law ("UMG Mem."), Doc. Entry No. 21 at 6-7.) Plaintiff has failed to plead the involvement of a state actor. Moreover, plaintiff's attempt to join DHS to fabricate state conduct where it otherwise does not exist is frivolous. There are no allegations in the complaint or the motion to join DHS suggesting that DHS had any involvement with the production and publication of the

two movies at issue. Nor could there be.[1] Finally, these claims fail to state any other cognizable legal theory. Accordingly, the First Amendment claims are dismissed with prejudice.

### B. Plaintiff's New York Civil Rights Claims

Plaintiff's remaining claims, Counts IV-XI, can be construed as alleging that UMG and Viacom violated New York Civil Rights Law Sections 50-51.[2] (Comp. ¶¶ 55-84.) These claims must be dismissed with prejudice for several reasons. First, they are untimely. "[A]n action to recover damages for . . . a violation of the right of privacy under section fifty-one of the civil rights law" must be commenced within one year of the alleged violation. N.Y. C.P.L.R. § 215(3). Plaintiff filed the instant action on or about August 23, 2011. *Get Rich or Die Tryin'* was published on November 9, 2005, and *13* was published on March 13, 2010. (Compl. ¶¶ 10-11.) Contrary to plaintiff's contention, the subsequent broadcasting of these movies does not restart the statute of limitations. *See Nelson v. Working Class Inc.*, 2000 WL 420554, at *3 (S.D.N.Y. Apr. 18, 2000) (dismissing plaintiff's claim as barred by the statute of limitations). Accordingly, none of the claims related to this movie are timely.

Second, neither of the movies uses plaintiff's name, portrait, picture, or voice. To state a claim under Section 50 of New York Civil Rights Law, a plaintiff must plead: (1) usage of plaintiff's name, portrait, picture, or voice; (2) within the state of New York; (3) for the purposes of advertising or trade; (4) without plaintiff's written consent. *See* N.Y. Civ. Rights Law § 51.

---

[1] In addition to moving to join DHS as a defendant in the instant action, plaintiff filed a separate action, *pro se*, against DHS in the United States District Court for the Southern District of New York ("Southern District"). In that action, plaintiff sought to hold DHS liable for the same claims that he now seeks to litigate in this Court, should the Court grant his joinder motion. The Southern District dismissed his action with prejudice. *See Duncan v. DHS*, 12-CV-685(LAP), Doc. Entry No. 7 (dismissing plaintiff's complaint and denying *in forma pauperis* status for purposes of an appeal). For all of the same reasons as set forth in the Southern District's dismissal of the action against DHS, plaintiff's motion in the instant action to join DHS as a defendant is denied. Moreover, there are no allegations whatsoever that DHS had any involvement with the production and release of the two movies at issue in the instant action. Thus, in addition to frivolous nature of the claims against DHS, it would be improper to join DHS in this action.

[2] Section 50 forbids the "use[ ] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person" without prior consent. N.Y. Civ. Rights § 50. Section 51 creates a private right of action for violations of Section 50. N.Y. Civ. Rights § 51.

With respect to the claims relating to *Get Rich or Die Tryin'*, the complaint is void of any allegations that the movie used plaintiff's name, portrait, picture or voice. Plaintiff alleges that there is a character in that movie named "Majestic," plaintiff's nickname; however, the use of a nickname is insufficient as a matter of law to establish use of plaintiff's name. *See Costanza v. Seinfeld*, 279 A.D.2d 255, 255-56 (1st Dep't 2001) (explaining that "the similarity of last names between plaintiff and [a] fictional character is not cognizable under the statute" and affirming dismissal of a claim filed by Michael Costanza regarding the fictional character George Costanza on the television series Seinfeld); *People on Complaint of Maggio v. Charles Scribner's Sons*, 205 Misc. 818, 822 (N.Y. Mag. Ct. 1954) ("The statute protects the true name of a person from use for purposes of advertising or trade. It does not protect a nickname known to a few intimates . . . ."). The allegations related to the movie *13* are even more attenuated. There are no allegations whatsoever that can be construed as use of the plaintiff's name, portrait, picture or voice. Plaintiff contends that numeric codes link a character in the movie to him; however, no rational viewer would connect the purported numeric codes to plaintiff.

It is well established that "works of fiction do not fall within the narrow scope of the statutory definitions of 'advertising' or 'trade.'" *Costanza*, 279 A.D.2d at 255; *Lemerond v. Twentieth Century Fox Film Corp.*, 2008 WL 918579, at *3 (S.D.N.Y. Mar. 31, 2008) (dismissing a Section 51 claim made by a person depicted in the movie *Borat* on the ground that use of plaintiff's likeness in a movie "is not actionable under NYCRL § 51"). Thus, plaintiff's claims arising out of the alleged use of his image in the movies *Get Rich or Die Tryin'* and *13* fall outside the scope of the protections of Section 51. Accordingly, for all of the reasons set forth above, plaintiff's Section 51 claims are dismissed with prejudice.

### C. Plaintiff's Common Law Right to Privacy Claims

It is well settled that New York does not recognize the common law right of privacy and that the exclusive remedy for such harm is provided under Sections 50 and 51. *See Hurwitz v. United States*, 884 F. 2d 684, 687 (2d Cir. 1989) (explaining that "in [New York], there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51"). Thus, to the extent the complaint can be construed as raising common law claims of privacy, those claims must be dismissed with prejudice as they are not cognizable under New York law.

### D. Plaintiff's Slander Claims

"The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F. 3d 256, 265-66 (2d Cir. 2001) (citing *Dillon v. City of New York,* 261 A.D.2d 34, 37-38 (1st Dep't 1999)). It is possible to construe Counts Six and Ten of the complaint to allege slander. However, plaintiff has not and cannot allege that any of the assailed statements in the movies are "of and concerning" him. There were no statements made about or to plaintiff. All of the assailed statements were made to a fictional character in a fictional movie. *See Gristede's Foods, Inc. v. Poospatuck (Unketchauge) Nation*, 2009 WL 4547792, at *12 (E.D.N.Y. Dec. 1, 2009) ("In order to withstand a motion to dismiss, a plaintiff must 'advance [ ] colorable claims of having been identified and described by the defamatory comment.'" (quoting *Geisler v. Petrocelli*, 661 F. 2d 636, 640 (2d Cir. 1980)). Moreover, claims for slander are subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3). As set forth above, the complaint was

7

filed more than one year after the publication of both movies.  Accordingly, plaintiff's slander claims are dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, UMG and Viacom's motions to dismiss with prejudice are granted and plaintiff's motions to amend the complaint and to join DHS as a defendant are denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       May 30, 2012

/s/
DORA L. IRIZARRY
United States District Judge